## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ALLAN T. JANUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No.  CIV-19-507-R |
| | ) | |
| | ) | |
| **OKLAHOMA DEPARTMENT OF** | ) | |
| **WILDLIFE CONSERVATION, *et. al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Before the Court is the Partial Motion to Dismiss of Defendant Oklahoma Department of Wildlife Conservation ("ODWC"), Defendant J.D. Strong ("Strong"), Defendant Alan Peoples ("Peoples"), and Defendant Wade Free ("Free"). Doc. No. 33. Plaintiff Allan T. Janus ("Plaintiff") filed a response, Doc. No. 34, and Defendants then filed a reply. Doc. No. 37. The Court finds as follows.

Plaintiff worked as a Research Supervisor for the ODWC from April 2012 to March 2019. Prior to 2017, "ODWC had never formally [or informally] disciplined Janus." Doc. No. 32, ¶¶ 15–16. In late May of 2017, Plaintiff alleges he "became aware of a budget shortfall and expressed concern to his immediate supervisor, Defendant Peoples, as [Plaintiff] knew that his supervisors had misappropriated" the funds. *Id.* ¶ 17.

Peoples, the Chief of Wildlife at ODWC, then scheduled a meeting to address the issue with Plaintiff on May 31, 2017, at which time Plaintiff alleges Peoples "stood over [him] with an aggressive posture" and asked, "[s]o do you want the lube or not?" because

"[y]ou might appreciate [it], for what Bill is about to do to you." *Id.* ¶ 19. Then, on July 4, 2017, Plaintiff informed Defendant Strong, the ODWC Director, that "Peoples and Bill Dinkines improperly removed $200,000 from his research budget." *Id.* ¶ 22. In response, on June 30, 2017, Strong allegedly told Plaintiff that he "should probably look for a new job." *Id.* ¶ 23.

Plaintiff then recorded a conversation on July 20, 2017, where after discussing Plaintiff's report with his supervisors, Peoples said, "[y]ou can't do that [file a complaint]" and told Plaintiff he would be "held to a 'new standard'" from that point on. *Id.* ¶ 25. Plaintiff alleges that "[i]t was clear and palpable during the meeting that Peoples had a clear and present plan to retaliate against [Plaintiff] and that Peoples was angry that [Plaintiff] made reports to … Strong." *Id.* ¶ 27.

Next, Plaintiff allegedly brought the recorded conversation to Strong's attention. *Id.* ¶ 30. Strong then told Plaintiff that "it made no difference to him" and kept Peoples as Plaintiff's supervisor believing Peoples could pressure Plaintiff into quitting. *Id.* After suffering from "a complete state of anxiety and depression," Plaintiff abided by a doctor's recommendation to take leave. *Id.* ¶ 31. When he returned to work, he was immediately placed on a six-month disciplinary probation. *Id.* ¶ 33. After his probationary period ended, Plaintiff was kept off his original project and was "still being blackballed and scrutinized." *Id.* ¶ 39. The alleged mistreatment continued, and

> Peoples and Free began arbitrarily placing deadlines on [Plaintiff] that were not there before. His subordinates and co-workers continued not communicating with him, rendering him unable to perform at the level he was accustomed to. Furthermore, throughout 2018, subordinate positions to [Plaintiff] were intentionally left unfilled such as to make the working

2

environment intolerable for [Plaintiff], as he had to complete the work of 3-
4 people at a time.

*Id.* ¶ 39.

On April 25, 2018, Plaintiff "executed a Charge of Discrimination" with the EEOC.
*Id.* ¶ 40. Around November 2018, during a one-on-one meeting and after Plaintiff indicated
that he asked Strong to investigate the misappropriation of funds, Strong "repeatedly stated
[ ] that [Plaintiff] should just quit if his interest in still working for the agency was not
focused entirely on the agency itself." *Id.* ¶ 42. During the meeting, Plaintiff alleges that
while reviewing the previous complaint, Strong asked, "You didn't really think they were
going to bend you over the table, whip out the lube and sodomize you, did you?" *Id.* ¶ 44.

On February 26, 2019, Plaintiff filed multiple petitions with the Oklahoma Merit
Protection Commission ("MPC"). *Id.* ¶ 46. To accompany his complaints, on March 13,
2019, Plaintiff made copies of ODWC records that he believed "he had the full right and
authority to obtain." *Id.* ¶ 47. Peoples discovered the copies of these records, informed
Strong and Free, and then "Peoples, Free, and [an] armed escort arrived in the file room…",
confronted Plaintiff, placed him on administrative leave, and escorted him out of the
building. *Id.* ¶¶ 49–52.

In response, Plaintiff filed suit against ODWC in this Court for i) wrongful
termination in violation of public policy and ii) unlawful retaliation in violation of Title
VII of the Civil Rights Act of 1964, as well as the following claims against the individual
Defendants: iii) First Amendment violations, iv) intentional interference with employment
contract, and v) civil conspiracy pursuant to 42 U.S.C. § 1983.

This motion to dismiss is limited to the first four claims. ODWC moves to dismiss the claims against it and the individual Defendants move to dismiss the First Amendment and intentional interference with employment contract claims against each of them.

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must determine whether Plaintiff has stated a claim upon which relief may be granted. The motion is properly granted when the Complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's Complaint must contain enough "facts to state a claim to relief that is plausible on its face," *id.* at 570, and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555 (citations omitted). The Court must accept all the well-pleaded allegations of the Complaint as true and must construe the allegations in the light most favorable to Plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the Court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

The Court notes from the outset that the motion to dismiss includes multiple factual averments. *See* Doc. No. 33, pp. 7–9. At the pleading stage, the Court must accept all factual allegations in the Complaint as true. *See e.g.*, *Twombly*, 550 U.S. at 555. Therefore, the Court will not consider Defendants' factual allegations.

Plaintiff alleges that he states a sufficient wrongful termination tort claim under the exception to the general at-will employment rule outlined by the Oklahoma Supreme Court in *Burk v. K-Mart Corp.,* 770 P.2d 24, 26 (Okla. 1989). To state a claim under *Burk*, the Plaintiff

> must allege (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

*Vasek v. Bd. of Cnty. Comm'rs of Noble Cnty.*, 186 P.3d 928, 932 (Okla. 2008) (citing *McCrady v. Okla. Dept. of Pub. Safety*, 122 P.3d 473, 475 (Okla. 2005)).

The parties dispute the final element—whether an adequate remedy exists to protect the policy goal Plaintiff alleges ODWC violated.[1]

Traditionally, in Oklahoma, "an employment contract of indefinite duration [could] be terminated without cause at any time without incurring liability...". *Burk,* 770 P.2d at 26; *see also Hinson v. Cameron*, 742 P.2d 549, 552, n.6 (Okla. 1987) ("Oklahoma jurisprudence recognizes the so-called at-will employment doctrine."). Yet, in *Burk*, the Supreme Court of Oklahoma explained that "[a]n employer's termination of an at-will

---

[1] In its reply brief, ODWC argues—for the first time—that Plaintiff's whistleblower claim does not address a violation of an Oklahoma public policy goal, and thus it lacks the third element of a *Burk* tort. Doc. No. 37, p. 2. In order to prevent "manifest[] unfair[ness]", *see Hill v. Kemp*, 478 F.3d 123, 1251 (10th Cir. 2007), courts in the Tenth Circuit are generally precluded from considering arguments made for the first time in a reply brief. *See United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019). Accordingly, ODWC's argument—that no Oklahoma public policy goal was violated—is deemed waived.

employee in contravention of a clear mandate of public policy is a tortious breach of contractual obligations." 770 P.2d at 28.

ODWC argues that Plaintiff's reliance on *Burk* is misplaced because the Oklahoma Whistleblower Act provides an adequate remedy. Doc. No. 33, p. 5. Plaintiff responds that because he is an employee of a constitutional state agency, his *Burk* claim is proper.

When a plaintiff alleges that whistleblowing is the cause of his discharge, the Court applies the "adequacy of remedies" test. *Wheat v. State ex rel. Tulsa Cnty. Dist. Attorney*, 241 P.3d 1150, 1154–55 (Okla. Civ. App. 2010) ("The adequacy of remedies test only [applies when] a plaintiff's conduct (such as whistleblowing) is alleged to have triggered the discharge.") (citing *Shephard v. CompSource Oklahoma,* 209 P.3d 288, 292 (Okla. 2009)). Under this test, "a court must determine whether available remedies are sufficient to protect [the state's] public policy goals." *Shephard*, 209 P.3d at 290 (citing *Kruchowski v. Weyerhaeuser Co.*, 202 P.3d 144, 150 (Okla. 2008) ("When a statutory remedy adequately accomplishes the goal of protecting Oklahoma public policy, a common law remedy is not needed.")). In *Shephard*, the Court explained that the Oklahoma Whistleblower Act was "sufficient to protect the Oklahoma public policy goal of protecting employees who report [ ] wrongful governmental activities." 209 P.3d at 292; *see also Rouse v. Grand River Dam Auth.*, 326 P.3d 1139, 1140 (Okla. 2014), *as corrected* (May 20, 2014) (A "tort claim for discharge in violation of public policy is not available to a discharged whistleblower employee.").

On its face, the Oklahoma Whistleblower Act appears to be an adequate remedy for Plaintiff. In *Shephard*, the plaintiff, an at-will state employee, alleged that her termination

violated the public policy of prohibiting termination of whistle-blowers. 209 P.3d at 289. Here, Plaintiff, also an at-will state employee, alleged that he was terminated for reporting financial misconduct. Doc. No. 34, p. 10. Thus, similar to the plaintiff in *Shephard*, the public policy violation Plaintiff seeks to expose—ODWC's financial misconduct and subsequent retaliation—appears to be protected by the Oklahoma Whistleblower Act.

However, Plaintiff points out that because he is an employee of a constitutional state agency, Plaintiff is "excepted from merit protection jurisdiction." Doc. No. 34, p. 10 (citing *Shepard*, 209 P.3d at 293 n. 7). In *Shephard*, the Oklahoma Supreme Court outlined an exception to the adequacy of remedies test when a Plaintiff is "employed by officers, departments, and institutions of the state government that are granted constitutional authority to manage their respective affairs." *Shephard*, 209 P.3d 288, 293 n. 7. In other words, in Oklahoma, the Merit Protection Commission is without jurisdiction over claims arising from the internal affairs of agencies that receive authority from the Oklahoma Constitution. *See, e.g.*, *State ex rel. Bd. of Regents of Oklahoma State Univ. v. Oklahoma Merit Prot. Comm'n*, 19 P.3d 865, 866 (Okla. 2001) (explaining that "[t]he Commission is without jurisdiction over the instant controversy" because the Board of Regents of Oklahoma State University was granted exclusive authority pursuant to Art. 6 § 31a, Art. 13-A and Art. 13-B of the Oklahoma Constitution.).

ODWC receives its authority from Article 26, Section 1 of the Oklahoma Constitution, which provides that:

> There is hereby created a Department of Wildlife Conservation of the State of Oklahoma and an Oklahoma Wildlife Conservation Commission. The Department of Wildlife Conservation shall be governed by the Wildlife

7

> Conservation Director, hereinafter created, under such rules, regulations and policies as may be prescribed from time to time by the Oklahoma Wildlife Conservation Commission. !

*White v. Wint*, 638 P.2d 1109, 1111 (Okla. 1981) (quoting Okla. Const. art. XXVI § 1). Accordingly, because the ODWC boasts constitutional authority, the MPC does not have jurisdiction over an appeal brought in response to an adverse employment action at the ODWC. Therefore, because the MPC lacks jurisdiction over Plaintiff's whistleblower claim, Plaintiff is without an adequate remedy to pursue his claim. Because Plaintiff is without an adequate remedy, his *Burk* tort claim may proceed.

Thus, Plaintiff's claim falls within the exception outlined in *Shepard*, and therefore, Defendant's motion to dismiss Plaintiff's *Burk* tort claim is DENIED.

Next, ODWC seeks dismissal of Plaintiff's Title VII retaliation claim stemming from his reports of alleged harassment by Peoples. Title VII deems it "an unlawful employment practice for an employer to discriminate against any of his employees [...] because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e—3(a). To state a claim for retaliation, Plaintiff must allege (1) he engaged in protected opposition to discrimination, (2) the defendant took an adverse employment action against him, and (3) a causal connection exists between the protected activity and the adverse action. *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (citing *Khalik*

*v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)).[2] "To establish that a causal connection exists," a plaintiff "may proffer 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Walton v. New Mexico State Land Office*, 113 F. Supp. 3d 1178, 1190 (D.N.M. 2015) (citing *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007)).

The parties dispute the first element—whether Plaintiff "engaged in protected opposition to discrimination." *Bekkem*, 915 F.3d at 1267 (citing *Khalik*, 671 F.3d at 1193). ODWC argues that Plaintiff never engaged in protected opposition to discrimination because "no reasonable person would believe [the lube comment] constituted discrimination." Doc. No. 33, p. 8. Plaintiff responds that he reported a hostile work environment and "conduct that he reasonably believed was motivated by his gender." Doc. No. 34, p. 11.

To engage in protected opposition to discrimination, the plaintiff need not show an actual violation of Title VII. *See Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875, 890 (10th Cir. 2018) (citing *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015-16 (10th Cir. 2004)). However, the plaintiff must have a "reasonable, good faith belief that the underlying conduct that [he] opposed violated Title VII." *Oliver v. Peter Kiewit & Sons/Guernsey Stone*, 106 F. App'x 672, 675 (10th Cir. 2004); *see also Davis v. Bd. of Cnty. Comm'rs of Stephens Cnty.*, No. CIV-18-118-D, 2019 WL 4752271, at *5 (W.D.

---

[2] Plaintiff need not establish a prima facie case in the Complaint but setting forth the cause of actions' elements guides the Court in its determination of whether Plaintiff has stated a plausible claim. *Khalik*, 671 F.3d at 1192 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). !

Okla. Sept. 30, 2019). There is a subjective and an objective component to establishing a "reasonable, good faith belief" underlying a proper retaliation claim. *Neely v. City of Broken Arrow, Oklahoma*, No. 07-CV-0018-CVE-FHM, 2007 WL 1574762, at *2 (N.D. Okla. May 29, 2007). Here, ODWC argues that Plaintiff's claim fails on the objective component.

In analyzing Title VII retaliation claims, the Supreme Court has explained that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (citing *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Taliaferro v. Lone Star Implementation & Elec. Corp.*, 693 F. App'x 307, 311 (5th Cir. 2017) (granting employer's motion to dismiss because "a reasonable employee would not believe [...] that ... a single sexually-oriented joke was unlawful"); *Davis*, No. CIV-18-118-D, 2019 WL 4752271, at *5 (one inappropriate comment by a co-worker and four infrequent, isolated inappropriate comments by a supervisor were "more akin to 'mere offensive utterance[s]'" and thus, no reasonable person could have held a good faith belief Title VII was violated (internal citation omitted)). In *Breeden*, a male supervisor read a comment in the presence of the female plaintiff that stated, "I hear making love to you is like making love to the Grand Canyon." *Id.* at 269. The plaintiff then reported the comment and alleged she was punished for her report. *Id.* at 270. The court, reasoning that the claim could not remotely be considered "extremely serious," explained that "no reasonable person could have believed that the single incident [...] violated Title VII's standard." *Id.* at 271.

10

In *Breeden*, the court explained that one sexually charged comment did not provide a reasonable, good faith belief of a Title VII violation. 532 U.S. at 269. Relying on *Breeden*, the court in *Davis* reasoned that neither one isolated sexual innuendo, nor four isolated, infrequent comments—that the "[plaintiff] believed were sexual in nature"—supplied a reasonable, good faith belief that a Title VII violation occurred. 2019 WL 4752271, at *5. In *Taliaferro*, the Fifth Circuit explained that when the owner and president of a corporation sent the plaintiff an unwanted sexually oriented joke over text message, the plaintiff did not have a reasonable, good faith belief that Title VII was violated. 693 F. App'x at 311.

Similarly, here, Plaintiff did not have a reasonable, good faith belief that the alleged conduct violated Title VII. Plaintiff alleged that prior to a workplace meeting on May 31, 2017, "Peoples immediately stated, 'So do you want the lube or not? You might appreciate [it], for what Bill is about to do to you.'" Doc. No. 32, ¶ 19. Plaintiff does not allege that Peoples or Plaintiff is homosexual, nor that the comment was motivated by a sexual desire of any nature. Clearly, the lube comment and Peoples' other alleged conduct—"call[ing] [Plaintiff's] pants 'gay'"—was inappropriate and unwelcome. Doc. No. 32, ¶ 25. However, "Title VII is designed to prevent workplace discrimination, not socially unacceptable behavior." *New v. Bd. of Cnty. Commissioners for Tulsa Cnty.*, 434 F. Supp. 3d 1219, 1226 (N.D. Okla. 2020) (dismissing plaintiff's retaliation claim because plaintiff did not "allege[] any facts suggesting that she had a reasonable good faith belief" that her complained-of conduct was unlawful).

Peoples' alleged conduct—though inappropriate—amounts to crude, isolated comments, rather than the type of "severe or pervasive [conduct that] alter[s] the conditions of [a] victim's employment and create[s] an abusive working environment." *See Penry v. Fed Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998) (explaining the standard of a Title VII hostile work environment claim). Courts have repeatedly held, as discussed above, that isolated comments, even when inappropriate or unwelcome, do not alone supply a reasonable, good faith belief that a Title VII violation occurred. *See, e.g.*, *Breeden*, 532 U.S. at 271. The conduct Plaintiff reported is no different here. Thus, taking all of Plaintiff's allegations into account, Peoples' alleged conduct did not support a reasonable, good faith belief of an underlying Title VII violation. Therefore, ODWC's motion to dismiss Title VII retaliation claim is GRANTED.

The individual Defendants seek dismissal of Plaintiff's First Amendment claims, pursuant to 42 U.S.C. § 1983, arguing that (i) his speech was part of his job responsibilities and is therefore not entitled to constitutional protection and (ii) the individual defendants are entitled to qualified immunity. Doc. No. 33, p. 11. Plaintiff responds that the Defendants misstate the Plaintiff's burden, the Plaintiff spoke as a private citizen on a matter of public concern, and qualified immunity does not apply. Doc. No. 34, p. 16.

"In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Joritz v. Gray-Little*, 822 F. App'x 731, 733 (10th Cir. 2020). Ordinarily, "[i]n this circuit, to show that a right is clearly established, the plaintiff must

point to 'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Garcia v. Escalante*, 678 F. App'x 649, 654 (10th Cir. 2017) ((citing *Callahan v. Unified Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1027 (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014))). The Court is free to address either prong of the qualified immunity analysis first.

Addressing the clearly established prong first "may avoid the risk of deciding a case incorrectly given insufficient briefing on the constitutional violation question." *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236–40 (2009)). Plaintiff argues that under *Trant v. Oklahoma*, 426 F. App'x 653, 660–61 (10th Cir. 2011), "the speech at issue triggered First Amendment protection and [the] defendants should have known it did." Doc. No. 34, p. 17.

When evaluating First Amendment claims by public employees on matters of public concern, the Tenth Circuit applies the five-part test outlined in *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Pickering v. Bd. of Education*, 391 U.S. 563 (1968), which asks:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Bailey v. Indep. Sch. Dist. No. 69 of Canadian Cnty. Oklahoma*, 896 F.3d 1176, 1181 (10th Cir. 2018) (citing *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)). Generally, the first three elements are issues of law and the last two are issues of fact. *Id.*

The individual Defendants first argue that Plaintiff's claim fails because his speech was not a matter of public concern.[3] Doc. No. 33, p. 11. Specifically, that "[a]s manager of the quail research project, Plaintiff was responsible for all of the budgetary issues related to it…" and accordingly, "any such report was merely part of the job [Plaintiff] was paid to perform." *Id.* Plaintiff responds that he "reported that his supervisors… misappropriated state funds" and such speech is clearly a matter of public concern. Doc. No. 34, p. 16.

It is clearly established in the Tenth Circuit that "reporting or threatening to report wrongdoing to outside authorities is not within the scope of official duties where the employee is not tasked to do so by his employer nor required to do so by independent legal obligation imposed as a function of his official position." *Trant*, 426 F. App'x at 660. Similarly, while speech is generally not protected if "the aim is simply to air grievances," *see Schalk v. Gallemore*, 906 F.2d 491, 495, speech focusing on disclosing malfeasance or wrongdoing by public officials is likely a matter of public concern. *Id.* (citing *Wulf v. City of Wichita*, 883 F.2d 842, 857 (10th Cir. 1989)).

Speech pursuant to an employee's official duties, however, is not protected. *Trant*, 426 F. App'x 653, 659 (10th Cir. 2011). Accordingly, "speech about workplace matters communicated through proper chain of command is typically deemed within the scope of official duties." *Id.* (citing *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010)). Thus, the inquiry for the Court is whether Plaintiff's speech fell inside or outside the scope of his duties as a Research Supervisor at ODWC.

---

[3] While the reply brief also argues that Plaintiff's claim fails on the first prong, arguments first presented in a reply brief are not considered in a motion to dismiss. *See Leffler*, 942 F.3d at 1197.

Plaintiff states that "[he] became aware of a budget shortfall and expressed his concern to his immediate supervisor" because he knew his "supervisors had misappropriated the monies leading to the budget shortfall." Doc. No. 32, p. 4, ¶ 17. At this point, "expressing concern" about a budget shortfall to immediate supervisors is certainly "speech about workplace matters communicated through the proper chain of command…", and thus, unprotected. *See, e.g.*, *Rohrbough*, 596 F.3d at 747. However, prior to his termination, Plaintiff states that he filed complaints alleging "unlawful use of public funds" with the MPC and discussed his "reports of discrimination, retaliation and whistleblowing activity" with four legislators. Doc. No. 32, ¶¶ 46, 54, 58. Construing the facts in the light most favorable to Plaintiff, raising a concern about the misappropriation of state funds outside his workplace's chain of command is a matter of public concern because it is speech alleging wrongdoing by public officials, and therefore, falls outside his duties as a Research Supervisor. Thus, Plaintiff properly alleged that his speech was protected speech under the First Amendment and that it was clearly established at the time of the alleged violation.

The individual Defendants also argue that Plaintiff "completely fails to describe any acts [Strong] took or which rights Strong allegedly violated." Doc. No. 33, p. 12. Additionally, the individual Defendants reason that "[a]s to … Peoples and Free, Plaintiff fails to present any facts, which would tend to show that either violated a clearly established constitutional right of which either Defendant should have been aware." *Id.* pp. 12-13.

The Court is unpersuaded by the individual Defendants' arguments. First, Strong's retaliatory motive is evidenced by Plaintiff's allegations that he notified Strong of the misappropriation of monies by his supervisors, and that after receiving the recorded

conversation between Peoples and Plaintiff, Strong told Plaintiff that "it made no difference to him" and kept Peoples as Plaintiff's supervisor believing Peoples could pressure Plaintiff into quitting. Doc. No. 32, ¶ 30. Further, in a one-on-one meeting, Strong "repeatedly stated to [Plaintiff] that he should just quit" if his interests were no longer aligned with the agency. *Id.* ¶ 42. After Plaintiff filed his complaints with the MPC and spoke to various legislators regarding his claim, Strong directed ODWC to escort Plaintiff from the building. *Id.* ¶ 49. Taken together, these factual allegations plausibly state a claim against Strong.

Second, Plaintiff alleges Peoples and Free "recommended that Strong terminate [Plaintiff] based on their false accusations." Doc. No. 32, ¶ 53. Further, after Plaintiff initially reported the misconduct, Peoples told him, "You can't do that [file a complaint]", and that because of his complaint, he would be "held to a 'new standard.'" *Id.* ¶ 25. Similar to his claims against Strong, at this stage of the proceeding, Plaintiff has alleged sufficient facts to state a claim for a First Amendment violation against Peoples and Free. *See, e.g.*, *Hawkins v. Bd. of Cnty. Comm'rs of Coffey Cnty. Kansas*, 376 F. Supp. 3d 1200, 1217 (D. Kan. 2019) (no qualified immunity when defendants fired plaintiff "for making statements that they did not like"); *Hankins v. Town of Lahoma*, No. CIV-16-295-D, 2016 WL 7443176, at *5 (W.D. Okla. Dec. 27, 2016) ("Plaintiff […] alleged conduct that would violate First Amendment rights" when the plaintiff filed a civil rights suit at the time of his termination.). Thus, the individual Defendants are not entitled to qualified immunity and the motion to dismiss Plaintiff's First Amendment claims is DENIED.[4]

---

[4] Notwithstanding the Court's denial of qualified immunity, Defendants may "re-urge this argument at the Summary Judgment stage"—once the record is fully developed. *See, e.g.*, *Miller v. City of Konawa*, No. 17-CIV-115-JHP, 2017 WL 6328943, at *3 (E.D. Okla. Dec. 11, 2017).

The individual Defendants also seek dismissal of Plaintiff's claim of intentional interference with an employment contract, arguing the claim is precluded under the Oklahoma Anti-Discrimination Act ("OADA") and that alternatively, the Complaint fails to allege sufficient facts to underlie Plaintiff's claim.

The individual Defendants argue that the OADA precludes Plaintiff's claim because in 2011, the "Oklahoma Legislature amended the OADA to eliminate common law remedies…". Doc. No. 33, p. 13. Plaintiff responds that the OADA does not prohibit his claim because the OADA does not abolish common law employment claims when the claim alleges conduct "*other than status-based gender discrimination.*" Doc. No. 34, p. 20 (emphasis in original).

The OADA "provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of … sex." Okla. Stat. tit. 25 § 1101(A). Accordingly, factual allegations of alleged sexual harassment, without alleging that the facts provide the basis for two distinct legal theories, are limited to a remedy through the OADA. *See Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017) (precluding plaintiff's tortious interference claim because it was "based on the same set of facts as his sex discrimination claim."). Thus, Plaintiff's claim of tortious interference with employment is limited to his factual allegations surrounding his whistleblowing activity.

To establish tortious interference with employment, a plaintiff must show: "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as

17

a result of the interference." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1165 (Okla.

2009). In Oklahoma,

> the second element of the tort of interference with contract "requires a
> showing of bad faith and thus cannot be committed within the scope of
> employment...". Thus, if Plaintiff has plausibly alleged that any of the
> Individual Defendants acted in bad faith, [his] claim … may proceed.

*Vesper v. Indep. Sch. Dist. No. 89 of Oklahoma City*, No. CV-17-1165-G, 2018 WL

6070354, at *3 (W.D. Okla. Nov. 20, 2018) (internal citations omitted).

Plaintiff alleged that after reporting the budget shortfall in May of 2017 and

receiving the recording of Plaintiff's conversation with Peoples, Strong kept Peoples as his

supervisor in order to pressure Plaintiff to quit. Doc. No. 32, ¶ 30. Plaintiff also alleges that

Peoples and Free arbitrarily placed deadlines on him to sabotage his work performance, *Id.*

¶ 3p, and recommended that Strong terminate him based on false accusations. *Id.* ¶ 53.

Taken together, Plaintiff's allegations sufficiently state a plausible claim of intentional

interference with an employment contract.

The individual Defendants alternatively argue Plaintiff's claim should be dismissed

because they each "clearly [had] the privilege to take the actions as alleged by Plaintiff."

Doc. No. 37, p. 10. Specifically, the individual Defendants rely on *McNickle v. Phillips

Petroleum Co.*, 23 P.3d 949 (Okla. Civ. App. 2001), arguing that just as the court "found

the defendant had the privilege to interfere … [in *McNickle*,] these Defendants had the

privilege to fire this Plaintiff." *Id.*

"*Summary judgment* is properly granted on [a] claim of tortious interference with

the employment contractual relation where '[d]efendants [have] produced admissible

evidence of a proper purpose for their actions [and a plaintiff] provides no admissible evidence of an improper or unjustified act by [defendants].'" *McNickle*, 23 P.3d at 951 (emphasis added) (citing *Haynes v. South Community Hospital Management, Inc.,* 793 P.2d 303, 307 (Okla. Civ. App. 1990)). In *McNickle*, the court found that the defendant was entitled to summary judgment because its firing of the plaintiff "was fair, with honest intent, and to better [defendant's] business and not principally to harm [the plaintiff]." 23 P.3d at 952. Further, the defendants offered evidence of a proper purpose for its action and the plaintiff failed to offer evidence to show the decision was improper. *Id.* at 953.

Dismissing Plaintiff's claim at this stage would be premature. The individual Defendants argue that Plaintiff "was obviously mishandling his project budgets, refusing to coordinate with his supervisor, and hurting the agency." Doc. No. 37, p. 10. The Court declines to credit such factual allegations because in a motion to dismiss, the Court construes all factual allegations in favor of the Plaintiff. *See Twombly*, 550 U.S. at 555. Plaintiff states that the individual Defendants—acting out of malice—undermined his work performance, falsely accused him of lying, and directed the course of his termination, which raises an inference of bad faith. Therefore, the intentional interference with his employment claim is plausible, and the individual Defendants' motion to dismiss is DENIED.

In conclusion, Defendants' Partial Motion to Dismiss is GRANTED IN PART and DENIED IN PART, as set forth herein.

**IT IS SO ORDERED** on this 8th day of February 2021.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE